**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)   *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN SULLIVAN,** | : | Civil Action No. |
| 1041 Conway Court | : | |
| Warwick, PA 18974 | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **PHILADELPHIA GAS WORKS,** | : | |
| 800 W Montgomery Avenue | : | |
| Philadelphia, PA 19122 | : | |
|     Defendant. | : | |

### CIVIL ACTION

Plaintiff, Brian Sullivan (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Philadelphia Gas Works (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant Philadelphia Gas Works is a natural gas utility

company with a location and corporate headquarters located at 800 W Montgomery Avenue, Philadelphia, PA 19122.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under the ADA and PHRA.

13. On or about April 5, 2024, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2024-04923 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated December 4, 2025.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. In or around March 2001, Defendant hired Plaintiff.

21. Plaintiff held multiple position throughout his employment with Defendant.

22. In or around 2010, Defendant promoted Plaintiff to the position of Inspector.

23. Plaintiff was well qualified for his position and performed well.

### PLAINTIFF IS DISABLED

24. Plaintiff has the serious medical conditions of Epilepsy, Generalized Anxiety Disorder ("GAD"), Hypertension and Insomnia, which are considered to be disabilities under the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").

25. The major life activities affected by Epilepsy, GAD, Hypertension and Insomnia, include, but are not limited to, sleeping, caring for oneself and working.

26. In or around 2019, Plaintiff suffered his first seizure at Defendant.

### PLAINTIFF WAS PRESCRIBED MEDICAL MARIJUANA TO TREAT HIS DISABILITIES

27. In May of 2021, Plaintiff was prescribed a medical marijuana card to treat his disabilities.

28. Plaintiff is not able to take regular sleeping medication due to his Epilepsy.

### DEFENDANT REFUSED TO ALLOW PLAINTIFF TO USE HIS PRESCRIBED MEDICAL MARIJUANA

29. In or around November 2022, Rob Sheehan, Personnel Coordinator, called Plaintiff in for a random drug test.

30. Plaintiff tested positive for marijuana.

31. Plaintiff informed Dr. Robert Barlow, Defendant's Physician, of his medical marijuana card and showed him it.

32. Dr. Barlow stated that Plaintiff could not use medical marijuana while working for Defendant.

### **DEFENDANT PLACED PLAINTIFF ON DESK DUTY**

33. From November 2022 through March 2023, Sheehan and Nicholas Cruz, Officer Supervisor, forced Plaintiff to work from a desk at another plant that was further from Plaintiff's home.

34. Defendant designated Plaintiff as on "sensitive duty", meaning that Plaintiff could not do field work and only did desk work instead.

35. Prior, Plaintiff's work was in the field performing inspections.

36. This completely changed Plaintiff's job duties and work site.

### **DEFENDANT INFORMED PLAINTIFF THAT HE WAS RESPONSIBLE FOR FINDING ANOTHER ROLE THAT DID NOT REQUIRE DRUG TESTING**

37. Matthew Rohrer, Manager of Organizational Development, informed Plaintiff via email that it was Plaintiff's responsibility to find another role at Defendant that was not a position that required drug testing.

### **PLAINTIFF WAS PLACED ON A MEDICAL LEAVE OF ABSENCE DUE TO HIS DISABILITIES**

38. In or around March 2023, Plaintiff suffered a nervous breakdown along with a severe anxiety attack.

39. Plaintiff was hospitalized at Brooklawn Behavioral Hospital for approximately nine (9) days in connection with his disability.

40. Plaintiff then underwent approximately eight (8) weeks of outpatient therapy.

41. Joe Groves was the Employee Assistance Program Coordinator, during this time.

42. In or around April 2023, Plaintiff applied for Family and Medical Leave Act ("FMLA") leave to cover his hospitalization and recovery time.

43. Workpartners Absence Management Unit, Defendant's third-party benefits administrator, approved Plaintiff's FMLA leave request to cover this period, initially from approximately March 21, 2023 through April 10, 2023.

**PLAINTIFF SUBMITTED TWO (2) EXTENSIONS FOR HIS MEDICAL LEAVE OF ABSENCE**

44. Plaintiff submitted two (2) extensions for this FMLA leave and was approved through June 2, 2023.

**PLAINTIFF SUBMITTED ADDITIONAL PAPERWORK TO APPLY FOR DISABILITY RETIREMENT**

45. In or around April 2023, Plaintiff submitted paperwork to Defendant from Dr. Ruchi Bhutani, Primary Care Physician, Der. Mercedes Jacobson, Neurologist, and Persida Ghibilic, Therapist, for disability retirement.

46. Rohrer requested additional documentation from April through September 2023.

47. Plaintiff provided all requested documentation multiple times.

48. Plaintiff did not work during this time.

49. He was waiting for Defendant's decision about his disability retirement.

**DEFENDANT REQUIRED PLAINTIFF TO ATTEND AN INDEPENDENT MEDICAL EXAMINATION REGARDING HIS DISABILITY RETIREMENT APPLICATION**

50. After months, in or around October 2023, Rohrer informed Plaintiff via email that Defendant could not confirm Plaintiff's disabilities.

51. Rohrer stated that Plaintiff would need to be examined by Defendant's Independent Medical Examiner to confirm his eligibility for disability retirement.

52. Plaintiff met with the doctor in or around October 2023 to be examined.

### DEFENDANT DENIED PLAINTIFF'S DISABILITY RETIREMENT

53. Approximately two (2) months later, in or around December 2023, Rohrer informed Plaintiff that his disability retirement application had been denied.

### DEFENDANT OFFERED PLAINTIFF A CLERK POSITION, BUT REQUIRED HIM TO TAKE A TEST TO BE ELIGIBLE

54. Rohrer offered Plaintiff a Clerk position at Defendant.

55. Rohrer stated that Defendant would provide Plaintiff two (2) hours of training.

56. Then, Plaintiff would be asked to take a Clerk test to be approved for the position.

57. Plaintiff completed two (2) hours of training.

### ROHRER REFUSED TO PROVIDE PLAINTIFF WITH HIS REQUESTED ADDITIONAL TRAINING

58. Rohrer scheduled Plaintiff to take the Clerk test on or about January 16, 2024.

59. Plaintiff asked for additional training, but Rohrer denied this request.

60. Nonetheless, Plaintiff went to take the test as scheduled.

### PLAINTIFF'S COMPUTER SHUT DOWN DURING THE TEST

61. During the test, Defendant's computer shut down.

62. Plaintiff was forced to start the test all over again.

### DEFENDANT DID NOT INFORM PLAINTIFF OF THE RESULTS OF HIS TEST FOR WEEKS

63. Rohrer did not respond to Plaintiff for weeks about the status of his employment and the results of his test.

64. Plaintiff contacted Mike McDonough, Union Representative, about this.

65. McDonough stated he would speak with Defendant and would get back to Plaintiff.

**DEFENDANT TERMINATED PLAINTIFF**

66. Then, on or about February 23, 2024, Rohrer emailed Plaintiff that he had been terminated from Defendant.

67. Rohrer alleged that Defendant could not accommodate Plaintiff.

68. Defendant discriminated against Plaintiff due to his disability, failed to accommodate him and retaliated against him for utilizing his medical leave and/or for requesting a reasonable medical accommodation in violation of the ADA, the PHRA and the PFPO.

69. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – DISABILITY DISCRIMINATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

70. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

71. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

72. Plaintiff was qualified to perform the job.

73. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

74. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

75. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

76. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

77. The purported reason for Defendant's decision is pretextual.

78. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

79. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

80. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

81. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT II – DISABILITY DISCRIMINATION
### PENNSYLVANIA HUMAN RELATIONS ACT

82. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

83. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, a disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

84. Plaintiff was qualified to perform the job.

85. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

86. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

87. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

88. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

89. The purported reason for Defendant's decision is pretextual.

90. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

91. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

92. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT III – DISABILITY DISCRIMINATION
### PHILADELPHIA FAIR PRACTICES ORDINANCE

93. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

94. Plaintiff is a "qualified individual with a disability" as that term is defined under the PFPO because Plaintiff has, or had at all times relevant hereto, a disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

95. Plaintiff was qualified to perform the job.

96. Plaintiff was subject to an adverse employment action, including, but not limited to

termination.

97. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

98. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

99. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

100. The purported reason for Defendant's decision is pretextual.

101. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

102. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

103. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT IV – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

104. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

105. Plaintiff engaged in activity protected by the ADA.

106. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

107. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

108. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT V – RETALIATION
### PENNSYLVANIA HUMAN RELATIONS ACT

109. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

110. Plaintiff engaged in activity protected by the PHRA.

111. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

112. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT VI – RETALIATION
### PHILADELPHIA FAIR PRACTICES ORDINANCE

113. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

114. Plaintiff engaged in activity protected by the PFPO.

115. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

116. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Brian Sullivan, requests that the Court grant him the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Emotional pain and suffering;

(d) Reasonable attorneys' fees;

(e) Recoverable costs;

(f) Pre and post judgment interest;

(g) An allowance to compensate for negative tax consequences;

(h) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA, the PHRA and the PFPO.

(i) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(j) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(k) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

**CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

                                                                                                               RESPECTFULLY SUBMITTED,

                                                                                                               KOLLER LAW, LLC

Date: March 4, 2026               By:   */s/David M. Koller*
                                                               David M. Koller, Esquire
                                                               Jordan D. Santo, Esquire
                                                               2043 Locust Street, Suite 1B
                                                               Philadelphia, PA 19103
                                                               215-545-8917
                                                               davidk@kollerlawfirm.com
                                                              jordans@kollerlawfirm.com

                                                               *Counsel for Plaintiff*